## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

YU YI CHIEN,

                Plaintiff,

    v.                                      Civ. No. 08-486-RMU

THE GEORGE  WASHINGTON UNIVERSITY,

                Defendant.

## MOTION TO DISMISS

The George Washington University ("GW") moves to dismiss the Complaint in this case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In support of this motion, GW submits the following points and authorities:

### Summary

The plaintiff in this case, Yu Yi Grace Chien, is a former student in the doctoral program of GW's Graduate School of Education and Human Development ("GSEHD"). Ms. Chien was dismissed from that program in December 2006 because of her failure to make timely progress with respect to her doctoral dissertation.  Compl. ¶ 4; *id.* Ex. 1.

In her Complaint, Ms. Chien "alleges an improper removal from the University Graduate School Program," *id.* ¶ 2, and asserts that the grades she earned in the GSEHD courses she took before becoming a doctoral candidate "are sufficient to permit [her] re-admission to the university."  *Id.* ¶ 6.  She seeks an order of mandamus instructing GW to annul its decision to dismiss her from the GSEHD and readmit her to its doctoral program.  *Id.* at 3.

The Complaint does not state a claim upon which relief could be granted. First, Ms. Chien does not allege that her dismissal was arbitrary or unjustified. Nor could she, since a letter she attaches to the Complaint – from GW's Executive Vice President for Academic Affairs – confirms that it was neither. Second, while Ms. Chien alleges that the grades she received in her graduate course work are "sufficient to permit" her readmission to the GSEHD doctoral program, she does not allege that they give her a "clear and indisputable right" to readmission regardless of her prior dismissal. Nor could she, since the "university rule" Ms. Chien references in the Complaint – from the GSEHD Doctoral Handbook – confirms that they do not.

Accordingly, since the Complaint does not – and cannot – make out any plausible claim for relief, it should be dismissed with prejudice.

## **Background**

Ms. Chien entered the GSEHD in 2002. She completed her graduate course work in early 2004 and began preparations for her doctoral research and dissertation.[1]

As a first step, Ms. Chien was required to develop a dissertation proposal. In the ordinary course, developing such a proposal requires one or perhaps two semesters of work by a student in consultation with his or her faculty advisers. By August 2005, however, after more than 18 months of meetings and discussions with her advisers, Ms. Chien had made no satisfactory progress toward the development of such a proposal. That month, the Dean of the GSEHD wrote to Ms. Chien noting her failure to proceed but granting her additional time to move forward with her dissertation.

---

[1]    The facts discussed in the Background section of this motion are drawn from the allegations in the Complaint and the April 9, 2007 letter attached thereto and incorporated by reference therein. *See* Compl. ¶ 4; *Krooth & Altman v. North American Life Assur. Co.,* 134 F. Supp. 2d 96, 99 (D.D.C. 2001) (motion to dismiss based on allegations in Complaint and materials incorporated by reference); *Sharpe v. NFL Players Ass'n,* 941 F. Supp. 2d 8, 10 n.1 (D.D.C. 1996) (same).

Another year passed, still with virtually no progress by Ms. Chien toward the development of an acceptable dissertation proposal. Accordingly, in August 2006, the GSEHD required Ms. Chien to commit to a deadline for producing an acceptable dissertation proposal during the fall 2006 semester.

Despite extensive guidance from her faculty advisers, Ms. Chien was unable to meet this deadline. Her status as a doctoral student was therefore terminated in late 2006.

Ms. Chien appealed this decision to Donald R. Lehman, Executive Vice President for Academic Affairs at GW. On April 9, 2007, Dr. Lehman responded to Ms. Chien, informing her that he had carefully reviewed the materials she had submitted, but that he was denying her appeal. According to Dr. Lehman, despite the passage of at least four academic semesters, notwithstanding extensive guidance from her faculty advisers, and even though she had been given several opportunities to succeed, Ms. Chien still had not been able to make sufficient progress toward development of an acceptable dissertation proposal to remain in the doctoral program. Compl., Ex. 1.

In reaching this conclusion, Dr. Lehman declined to "reverse [the GSEHD's] decision and declare that you did produce an acceptable proposal. Rather, our role is to review the process within the School to ensure that GSEHD followed its policies in your case and treated you fairly in comparison with other students in like circumstances. We have concluded that you have been treated fairly and that there is no basis for requesting reconsideration of the School's decision." *Id.* Dr. Lehman further noted that, given the course work she had completed, Ms. Chien could leave GW with a master's degree in Education Policy Studies – an option that had previously been offered to Ms. Chien by the GSEHD. *Id.*

## Argument

A motion to dismiss tests the legal sufficiency of a complaint. *Cotton v. District of Columbia,* 2008 U.S. Dist. LEXIS 25856, *30 (D.D.C. Mar. 31, 2008). It questions whether a plaintiff has asserted a plausible claim for relief and alleged facts consistent with it. *See id.* at *30-31 (citing and quoting *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1967, 1969 (2007)). To avoid dismissal, a complaint must have a prospect for success that rises above the level of speculation, and "possess enough heft to show the pleader is entitled to relief." *Bell Atlantic,* 127 S. Ct. 1966 (citing Fed. R. Civ. P. 8(a)(2)) (quotations omitted).

In resolving a motion under Rule 12(b)(6), a court must treat a complaint's factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor. *Cotton,* 2008 U.S. Dist. LEXIS 25856, at *32. Yet a court need not accept as true any inferences unsupported by facts alleged in the complaint or any legal conclusions cast as factual allegations. *Id.; see also Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002) (same). A plaintiff may also "plead himself out of court by alleging facts that render success on the merits impossible." *Sparrow v. United Airlines, Inc.,* 216 F.3d 1111, 1116 (D.C. Cir. 2000). *See also Trudeau v. FTC,* 456 F.3d 178, 193 (D.C. Cir. 2006) (same) (considering text of document attached to complaint in finding that plaintiff failed to state claim).

### A.    Academic Decisions Are Entitled To Great Deference.

In a case seeking mandamus relief, the ability of a plaintiff to plead a plausible claim is greatly restricted. The reason is that mandamus is a drastic remedy, available only in extraordinary situations, and warranted only when a plaintiff has a clear and

indisputable right to relief.  *See In re Cheney,* 406 F.3d 723, 729 (D.C. Cir. 2005); *see also United States ex rel. Rahman v. Oncology Assoc.,* P.C., 201 F.3d 277, 286 (4th Cir. 1999).[2]

The burden on a plaintiff is further increased in a case challenging an academic decision made by an institution of higher learning.  Both the Supreme Court and the District of Columbia Court of Appeals have held that such decisions are to be afforded great deference by courts, due to the unique relationship between professors and their students, and the complex considerations regarding learning and achievement on which decisions about student advancement are based.  As the Supreme Court has held, "the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision making."  *Board of Curators v. Horowitz,* 435 U.S. 78, 90 (1978).  *See also id.* at 96 n.6 (Powell, J., concurring) ("University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation."); *Alden v. Georgetown University,* 734 A.2d 1103, 1109 (D.C. 1999) ("to involve the courts in assessing the propriety of a particular grade would encourage endless litigation by unsuccessful students and undermine the credibility of the academic determinations by educational institutions") (citation and quotation omitted); *Kraft v. The William Alanson White Psychiatric Foundation,* 498 A.2d 1145, 1149 (D.C. 1985) (academic decision that student not making sufficient progress "is a determination calling for judicial deference").

---

[2]    While the writ of mandamus has been abolished in district courts, *see* Fed. R. Civ. P. 81(b), the rules nevertheless allow parties to seek relief previously available by mandamus through "appropriate action or motion" under the rules.  *Id.*  In such cases, "[t]he principles that governed the former writ now govern attempts to secure similar relief."  *Sanchez-Espinoza v. Reagan,* 770 F.2d 202, 207 n.7 (D.C. Cir. 1985).

As a result, courts will not intercede with respect to a university's decision regarding student advancement "unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Regents of the University of Michigan v. Ewing,* 474 U.S. 214, 225 (1985). *See also Jung v. The George Washington University,* 875 A.2d 95, 108 (D.C. 2005) (same). This is especially true in cases involving private institutions. *Alden,* 734 A.2d at 1110 n.9. In all cases, moreover, to preserve "society's confidence in the qualifications of individuals who have graduated from a particular educational institution, it is essential that the decisions surrounding the issuance of these credentials be left to the sound judgment of the professional educators who monitor the progress of their students on a regular basis." *Id.* at 1109 (citation and quotation omitted).

**B.    The Complaint States No Plausible Claim For Relief.**

Measured by these standards, Ms. Chien has not stated – and cannot state – a plausible claim for relief because she alleges that she was dismissed from GW for academic nonperformance and concedes that GW did so in an exercise of its professional judgment. *See* Compl. ¶ 4; *see also Ewing,* 474 U.S. at 225; *Alden,* 734 A.2d at 1109. As confirmed by the letter she attaches to her Complaint and incorporates by reference, Ms. Chien's dismissal was not the product of arbitrary and capricious decision-making; it followed a careful review of her circumstances, involved an exercise of professional judgment at the highest levels of the university, and resulted from her failure to make adequate progress on her dissertation. Since the Complaint "unmistakably demonstrates . . . that the faculty's decision was made conscientiously and with careful deliberation,"

*Ewing,* 474 U.S. at 225, it falls far short of pleading any plausible claim that Ms. Chien has a "clear and indisputable" right to reinstatement at GW. *See Rahman,* 201 F.3d at 286; *Jung,* 875 A.2d at 108; *see also Sparrow,* 216 F.3d at 1116 (dismissal appropriate when facts alleged make success impossible).

Ms. Chien asserts that when GW denied her request to be readmitted to the doctoral program, it cited deficiencies in her work and also said that she had "committed certain acts of insubordination" toward GW faculty. Compl. ¶ 4. Yet the letter she attaches and incorporates says nothing whatsoever about insubordination. *Id.* & Ex. 1. Instead, it makes clear that GW's decision regarding her status was based on her persistent inability to make progress on her dissertation, despite several extensions of time and extensive assistance from her advisers. No inference to the contrary is warranted. *See Cotton,* 2008 U.S. Dist. LEXIS 25856, at *32 (Court need not accept as true inferences unsupported by facts alleged in the complaint); *Trudeau,* 456 F.3d at 193 & n.31 (dismissal under Rule 12(b)(6) appropriate where material attached to complaint undermines claim).[3]

Ms. Chien also asserts that the decision not to readmit her to the GSEHD doctoral program was "sustained by [GW] with an inadequate opportunity for [her] to receive a formal hearing, in violation of [her] rights under the protocol of the University's policy and procedures." Compl. ¶ 5. Ms. Chien does not identify any particular policy or procedure in her Complaint – much less assert that she was prejudiced by the supposed

---

[3]     Even if the Court were to accept the assertion regarding "insubordination" at face value – despite the fact that Dr. Lehman's letter undercuts it completely – the Complaint would still require dismissal. *See Horowitz,* 435 U.S. at 91 n.6 (allegation that medical student's dismissal was based on personal failings relating to hygiene and tardiness, in addition to academic nonperformance, does not deprive university of judicial deference regarding academic decision, because these factors are clearly related to professional fitness); *Alden,* 734 A.2d at 1109 (decisions regarding who carries credentials as graduates left to sound judgment of university administrators) *cf. Jung,* 875 A.2d at 108-09 (deference to professional academic judgment required even in cases involving alleged violations of the D.C. Human Rights Act).

failure of GW to follow it, or that she complained to the University about that alleged failure before the decision to dismiss her was sustained. This is fatal to her case: "[e]ven accepting [her] factual allegations as true and drawing all reasonable inferences in her favor, bald assertions and conclusory allegations claiming that a University's rules or procedures were not followed, do not state a valid claim." *Ward v. New York University,* 2000 U.S. Dist. LEXIS 14067, *17 (S.D.N.Y. 2000) (citing cases) (dismissing student's claim for wrongful dismissal under Rule 12(b)(6)).

This result is especially appropriate here, since nothing in GW's policies and procedures entitle Ms. Chien to a "formal hearing" to review the GSEHD decision to dismiss her. Indeed, matters involving a student's academic advancement are routinely resolved by GW's undergraduate and graduate schools, including the GSEHD. While students adversely affected by a school's final decisions regarding their advancement may appeal to GW's chief academic officer, the Executive Vice President for Academic Affairs, nothing gives them any right to demand that he conduct a formal hearing to consider such appeals. In fact, in the one circumstance in which an appeal to GW's Executive Vice President for Academic Affairs <u>is</u> expressly authorized – where a student is sanctioned for violating the Code of Academic Integrity, by cheating for example (which Ms. Chien was <u>not</u> charged with) – the applicable policy provides that the appeal is based on a record review only. *See* <u>Guide to Student Rights and Responsibilities</u>, at 17, § 4(d) (Attachment 1 hereto).[4] Given that fact, it is neither surprising – nor inappropriate – that discretionary reviews of academic decisions regarding student

---

[4]     The Court may consider GW's appeal procedure attached to this motion either as a matter of judicial notice or because the plaintiff herself has referred to the "University's policy and procedures" in her Complaint. *See, e.g., Krooth,* 134 F. Supp. 2d at 99; *Sharpe,* 941 F. Supp. at 10 n.1.

advancement are based on written submissions as well.  *See Horowitz,* 435 U.S. at 86-88, 90 (even in cases involving public institutions, no "formal hearing" is required before a student is dismissed for academic reasons).

Finally, Ms. Chien alleges that the marks she received in her graduate school courses were "sufficient to permit" her readmission to the GSEHD under the "rules and regulations of the university."  Compl. ¶ 6.  Yet the rules on which Ms. Chien relies make clear that her success in the classroom only entitled her to pass the threshold into doctoral candidacy and commence work on a dissertation.  *See* Doctoral Handbook, at 15-17 (Attachment 2 hereto).[5]  They did not guarantee that she could continue in that capacity indefinitely, despite her lack of progress, or prevent GW from dismissing her from the program based on her inability to move forward.  *Id.*

That is not to say that Ms. Chien's achievements in the classroom were unimportant.  Indeed, as Dr. Lehman's letter states, it was in recognition of those accomplishments that GW offered to award Ms. Chien a Masters Degree in Education Policy Studies.  Compl., Ex. 1 at 2.  But those achievements do not give Ms. Chien a "clear and indisputable right" to an Order from this Court commanding GW to reinstate her as a doctoral candidate in the GSEHD.  Accordingly, she has failed to state a valid claim for relief.  *See Chandamuri v. Georgetown University,* 274 F. Supp. 2d 71, 79 (D.D.C. 2003) (student claim against university for wrongful suspension dismissed with prejudice under Rule 12(b)(6) because claim based on misreading of school's sanctioning guidelines).

---

[5]    The Court may also consider this university publication since plaintiff expressly relies on it, and it appears to be central to her claim.  *See supra,* note 4.

## **Conclusion**

For all the foregoing reasons, the Complaint should be dismissed with prejudice.

Respectfully submitted,

s/Thomas B. Smith
Thomas B. Smith
D.C. Bar No. 412192
Associate General Counsel
The George Washington University
2100 Pennsylvania Avenue, NW
Washington, D.C. 20052
Tel. (202) 994-6503
Fax (202) 994-4640
tbsmith@gwu.edu

Counsel for Defendant
The George Washington University

Date:   April 24, 2008

ATTACHMENT 1

THE GEORGE WASHINGTON UNIVERSITY

GRADUATE SCHOOL OF EDUCATION
AND HUMAN DEVELOPMENT



# DOCTORAL HANDBOOK

sor and either the secondary or third faculty advisor who signed your original program plan of study. If you are requesting a course-waiver, additional signatures may also be necessary.

# COURSE OF STUDY:
# ATTAINING NEW KNOWLEDGE AND SKILLS



**PHASE 1: Precandidacy    PHASE 2:** Candidacy

| Program Planning | **Course of Study** | Comprehensive Examination | Dissertation Proposal | Dissertation Research | Dissertation Defense | Graduation |

*Scholarship and a "Culture of Inquiry"*

Your course of study will involve the building of both knowledge and skills. Most of your course work is determined by the needs of the profession and your specific interests. In addition, precandidacy courses require you to be engaged in research activities early in your program and throughout it, blending ultimately into your dissertation research. As a doctoral student, you will be encouraged to assist faculty in ongoing research projects. You will be expected to participate in research forums with faculty and peers and to collaborate and engage in dialogue with fellow doctoral students in other departments and schools.

*Bridging Theory and Practice*

The doctoral program is designed to prepare you as an education or human service scholar in research, academic, and professional roles. As a scholar, you should be prepared to consider the usefulness and applications of knowledge. The development of research competence requires a conceptual framework that bridges theory and field-based practice. In order to facilitate the transfer of knowledge for improvement of practice, the doctoral program involves reciprocal relationships with the Washington area's broader educational and human service community. Your research, therefore, may be conducted in field-based settings in the community or in area schools, community agencies, and other organizations.

*Faculty Direction and Mentorship*

GSEHD faculty members understand students' commitment to doctoral study and are prepared to undertake the intensive mentoring relationship. Doctoral faculty and students are matched according to research interests. Your faculty mentor will provide direction to your research activities throughout your program of study and may serve as your dissertation chair.

*Exploration of Possible Dissertation Topics*

Students are strongly advised to consider their dissertation topic from the beginning of their doctoral program. They should use their first year of courses to examine many topics that might be of interest and to explore some more deeply in their course assignments. By the end of the first year they should settle on a specific topic and use the second year of course assignments to gain considerable knowledge of the topic and to identify important gaps that might be filled by dissertation

*The Graduate School of Education and Human Development*

research. Each gap will suggest one or more potential research questions. Many good research questions will prove inappropriate for your dissertation research. Be prepared to sift through many. The selection of research questions is discussed further in the *Handbook* section on the dissertation proposal.

*Academic Requirements*

No more than two grades (six credit hours) of C or a single grade of F is permitted throughout the doctoral program. Note the requirements stated below in the event of a C or F grade. Graduation requires a minimum cumulative grade-point average of B (3.0) in all course work taken following admission to a graduate program in the School. Only graduate course work that is taken at GW and that forms part of your program plan of study may be included in the grade-point average. If your grade-point average falls below 3.0, the Office of the Associate Dean will notify your primary advisor, and appropriate action will be taken.

In the case of receiving a grade of F for a course in your program plan of study, the Office of the Associate Dean will require a written statement from you justifying your continuance in the School and outlining the program to be followed. Continuation is contingent upon the dean's approval. The associate dean may seek the review and advice of the Post-Master's Appeals Committee to resolve the matter. If a grade of F is received for a course in the program plan of study, the grade is included in the grade-point average whether or not you repeat the course.

You may repeat a course in which a grade of C or above was received only with a written statement of permission from your department, unless the course description states that the course may be repeated for credit. Your program advisor will take the statement of permission to the Office of the Associate Dean for Academic Affairs for approval. It is then filed with the registrar. If a course is repeated, the first grade received remains on your record and is included in your grade-point average. Please refer to the student appeals process explained toward the end of this handbook, before the appendices.   Students in the Ph.D. program in Counseling are subject to different provisions and should refer to the *Handbook for Ph.D. Students in Counseling*.


# COMPREHENSIVE EXAMINATION:
# INTEGRATING AND ARTICULATING KNOWLEDGE GAINED

**PHASE 1: Precandidacy     PHASE 2:** Candidacy



| Program Planning | Course of Study | **Comprehensive Examination** | Dissertation Proposal | Dissertation Research | Dissertation Defense | Graduation |

After completing doctoral-candidacy course work, you must successfully complete the doctoral comprehensive examination. The examination must be passed within five years of beginning your doctoral program.

This examination assesses knowledge in your content area; the ability to synthesize theory, concepts, research, and practice in your discipline; and the ability to reason and critically analyze issues and problems related to your field. Your

*The GW Graduate School of Education and Human Development*

responses to the examination questions can be word-processed or handwritten. Contact the Office of Doctoral Student Services for further information.

To take the comprehensive examination, you must have completed or be in the last semester of completing all course work on your program plan of study, excluding CNSL, EDUC, HRD, SPED, or TRED 390, Pre-dissertation Seminar. If you have previously completed all that course work including the Predissertation Seminar, you are to be registered for one credit of CNSL, EDUC, HRD, SPED, or TRED 940, Examination Preparation, in the semester in which you will take the examination. Students generally are to have cleared all incompletes and in-progress grades from their transcript prior to taking the comprehensive examination. Exceptions may be made with written approval of the student's advisor.

Comprehensive examinations are offered by the school once per semester, usually toward the end of the fall and spring semesters and near the middle of the summer semester. Departments may establish alternate dates for groups on the condition that students have applied to the Office of Doctoral Student Services by the published deadlines and have met criteria for eligibility as determined by the Office of the Associate Dean for Academic Affairs. Alternate dates for groups must occur before the last date of classes of the semester in which the examination is administered. Alternate dates for individuals may also be set and are called special sittings. A "Special Sitting Application" is to be submitted to the Office of Doctoral Student Services to take the comprehensive examination at an unscheduled time. Contact the Office of Doctoral Student Services for regularly scheduled examination dates.

Students apply to take the comprehensive examination by filing the "Comprehensive Examination Application" form (see Appendix C) with the Office of Doctoral Student Services.

The doctoral comprehensive examination involves two days of examinations. The questions vary depending on department and program area. Since the program area faculty constructs the questions and determines the criteria for satisfactory responses, students should consult with them for guidance on how to prepare for the examination and how their responses will be evaluated.

Each examination question is read by two or more faculty members, and although every effort will be made to make the results of the examinations known as quickly as possible, the process usually takes several weeks to complete. You will receive a letter from the Office of Doctoral Student Services notifying you of the outcome of your examination. If one or another part of the examination is failed, you will be notified by your primary advisor and may retake that section. If a second failure occurs, you must petition the Post-Master's Appeals Committee to request to retake the examination a third time. Students in the Ph.D. counseling program do not have the option of retaking the examination for a third time.

Upon successful completion of all coursework, including 390, and the comprehensive examinations, you become a doctoral candidate.

# PHASE 2: CANDIDACY



PHASE 1: Precandidacy          PHASE 2: Candidacy

| Program Planning | Course of Study | Comprehensive Examination | **Dissertation Proposal** | **Dissertation Research** | **Dissertation Defense** | Graduation |

After completing all course work and successfully passing the comprehensive examination, you become a doctoral candidate and are ready to begin work on the dissertation research. For most doctoral students, this is the most intellectually and emotionally-challenging part of doctoral study. You are no longer allowed to learn mainly from other scholars; rather, you now have to make an original contribution to a body of knowledge. You do that by finding an important gap in knowledge and filling it. That is far easier said than done.

The dissertation research and defense is the culminating, integrative, scholarly experience of doctoral study. The purpose of the dissertation research is to (a) make an original contribution to knowledge, in the candidate's field of specialization; (b) demonstrate an advanced command of research skills; and (c) demonstrate an advanced ability to communicate findings so that other researchers in the field can understand and use them.

*The Successful Dissertation Experience*

- It allows you to integrate all your doctoral study reading, thinking, and field-based experiences in an original research and writing process.
- It builds your intellectual and emotional stamina and prepares you for future intellectual work and contributions to your field.
- It provides an opportunity to demonstrate competence with the theory and methods of the discipline and gain entrée into a community of scholars.
- It provides a foundation for future research, publishing, and presentations based on the dissertation.
- It establishes an important credential for university teaching or research appointments.

*Are You Ready for the Challenge?*

Many doctoral graduates have observed that dissertation work was one of the greatest intellectual and emotional challenges of their life.

You should consider this experience essential to your intellectual development and be prepared to make the necessary emotional, intellectual, and practical commitments. You need to be prepared to spend the necessary time, overcome the common disappointments of setbacks in the research schedule, commit to the highest standards of quality for the preparation of the document, and be open to accepting the continuous guidance and constructive critique of the dissertation committee.

The dissertation research requires more independence and more sustained work than doctoral courses. Your dissertation committee is to advise you about particularly complicated aspects of the research and writing, but their role is not to tell you how to do everything. You should make every effort to think through problems for yourself, in consultation with the applicable scholarly literature, and seek the

*The GW Graduate School of Education and Human Development*

committee's guidance only after making that effort.

Time management is important in dissertation work. Since there are few specific deadlines, it is easy for candidates with jobs and families to let dissertation work slide to the "next" week. It is almost impossible to predict how long it will take to develop a good dissertation research proposal. A schedule for the data collection and analysis is more feasible. The time needed to write the dissertation is also difficult to predict.

Appendix B lists additional dissertation resources. It includes more than a dozen books on dissertation proposal-writing, dissertation research, and dissertation writing that might prove useful if you are looking for additional guidance on specific matters. You should understand, however, that the requirements for a dissertation vary among universities, among colleges and schools within universities, and among faculty members within a given school. Some of the advice from these sources may contradict the policies of GSEHD or the judgements of your dissertation committee chair and members. When unsure, check in this handbook for the GSEHD policies and check with your committee about their expectations and judgments.

There are three major phases of dissertation work: developing the dissertation proposal, conducting the research and writing the dissertation, and defending the dissertation.

# DISSERTATION RESEARCH PROPOSAL:
# PLAN FOR ADDING TO KNOWLEDGE



| PHASE 1: Precandidacy | | | PHASE 2: Candidacy | | | |
|---|---|---|---|---|---|---|
| Program Planning | Course of Study | Comprehensive Examination | **Dissertation Proposal** | Dissertation Research | Dissertation Defense | Graduation |

Now you are to apply your accrued knowledge and skills to the development and conduct of an original research project. Dissertation work is multifaceted and complex.

The proposal is an important document, not only for you and your committee, but also for the research community and the University. It demonstrates your understanding of the theory and research associated with your research problem and your ability to apply that understanding to a plan of inquiry that can expand knowledge of the field. The candidacy phase provides an opportunity for you to create a proposal that reflects the dialogue built between you, your chair, and your committee members.

Successfully defending your dissertation proposal provides evidence that you and the committee have arrived at a sound methodology that will address worthwhile research questions. The proposal forms a working plan that can be used by you and the committee to guide the research, to evaluate progress, and to provide ongoing feedback.

*The Graduate School of Education and Human Development*

This handbook sets forth the general procedures for developing a successful dissertation proposal:

- The requirements for establishing and working with a dissertation committee
- The elements of a proposal
- The process to complete before beginning your research, including the human-research review requirements

To move successfully through the dissertation process, you must take responsibility to meet deadlines agreed upon with your committee and deadlines set by the school for defense of the dissertation and graduation. Your dissertation chair and the dean's office will make efforts to assist you in the process, but the responsibility to meet deadlines is yours.

Starting in spring 2001, GSEHD piloted voluntary collaborative dissertations involving two or more candidates. Some complex research questions may be better approached in a collaborative fashion by multiple candidates from one or more disciplines rather than from the single vision of an isolated researcher. Collaborative dissertations broadly refer to one topic with two or more proposals, each prepared by a different student and each having a different, but related, focus. Collaborative dissertations can encompass a range of related work ranging from a closely collaborative work to parallel dissertations with a common element such as a common data set or common population. The policies and procedures for piloting collaborative dissertations are given in Appendix D.

*Eight-Year Limit*

The doctoral dissertation must be written and defended within eight years from the time of admission to the doctoral program. Requests for extensions should be made in writing at least four months before the time would run out (six months, if it would run out during the summer) and be accompanied by good justification. Usually up to one-year extensions are granted by the Associate Dean for Academic Affairs. Any further extensions require approval by the Post-Master's Appeals Committee. Ph.D. students in Counseling are not eligible for an extension.

*Narrowing Down a Dissertation Topic and Research Questions*

As mentioned above, you are strongly advised to consider your dissertation topic from the beginning of your doctoral program. You should use your first year of course work to examine many topics that might be of interest and to explore some more deeply in your course assignments. By the end of the first year, you should settle on a specific topic and use the second year of course assignments to gain considerable knowledge of the topic and to identify important gaps that might be filled by dissertation research. Each gap will suggest one or more potential research questions.

Only a small portion of research questions will prove suitable for your dissertation research. Some research questions will be of little potential importance to either theory or practice. Some will be uninteresting to you. Some will be of little use for your projected career. Some will require more time or funding than you can afford—such as those that cannot be answered without a five-year longitudinal study and those that require intensive observations in a national classroom sample. Some will require access that you are unlikely to gain. Some will require mastering methodologies for which you may have little preparation, talent, or interest.

ATTACHMENT 2

# THE GEORGE
# WASHINGTON
# UNIVERSITY
## WASHINGTON DC

# GUIDE TO STUDENT RIGHTS
# AND
# RESPONSIBILITIES
# 2007-2008

| | |
|---|---|
| Statement of Student Rights and Responsibilities | 1 |
| University Policy on Equal Opportunity | 4 |
| Policy on Sexual Harassment | 4 |
| Student Grievance Procedures | 5 |
| Code of Student Conduct | 6 |
| Additional Conduct Regulations | 13 |
| Code of Academic Integrity | 15 |
| Privacy of Student Records | 19 |
| University Policies Available On-Line | 20 |
| A Final Word about Security | 20 |

*Distributed by The George Washington University Dean of Students Office*

6-07

members involved in a pending case shall not participate on a Hearing Panel during the pendency of the charge.

(e)  The Academic Integrity Council, by a two-thirds vote of the membership, may remove a member for non-participation. Each Academic Integrity Council shall, at the beginning of its term, define an expectation of participation for its members.

(f)  Vacancies, as they occur, shall be filled by the Selection Committee.

### Section 4:  Case Procedures
(a)  Charges involving violations of the Code of Academic Integrity may be initiated by either faculty, students, librarians or administrators. Any charges should be made as expeditiously as is reasonably possible  (normally within twelve working days except in the summer or during academic breaks and holidays) from the discovery of the infraction. Charges may be initiated as follows:

1)  A student may initiate a charge of academic dishonesty against another student, by referring the case to the faculty member involved and/or to the Academic Integrity Council. If the case is brought directly to the Academic Integrity Council, for action by a Hearing Panel, then the Associate Vice President for Academic Planning or a designee shall promptly notify the instructor of the involved course.

2)  When a faculty member initiates a charge or is made aware of a violation which the faculty member determines to be substantive, the faculty member shall contact the Academic Integrity Office in order to discover whether the student has ever been found guilty of a charge of academic dishonesty.

   i)  In first offense cases, the instructor shall either act directly, in consultation with the Department Chair, or refer the case to the Academic Integrity Council for action by a Hearing Panel. An instructor who acts directly must present the student with specific charges and a proposed sanction. Sanctions will be determined in accordance with Article III, Section 5 and Article II, Section 2 of this Code.

   ii)  If the faculty member acts directly then the accused student shall have the right to appeal directly to the Academic Integrity Council, for action by a Hearing Panel, should he or she disagree with the validity of the charge or the appropriateness of the sanction.

   iii)  Second offenses shall go directly to the Academic Integrity Council, for action by a Hearing Panel.

   iv)  If a faculty member is made aware of a violation which the faculty member determines not to be substantive, the faculty member shall notify the complaining student promptly.

3)  All charges initiated by members of the administration or librarians shall go directly to the Academic Integrity Council, for action by a Hearing Panel.

(c)  All actions, on any level, shall be recorded with the Office of the Associate Vice President for Academic Planning. This includes cases handled directly by instructors.

(c)  Deliberation of the hearing shall occur in two stages: the establishment of guilt and the recommendation of sanction. To find a respondent guilty, three-quarters of the voting panel members must agree. If the panel finds a respondent guilty, they shall also make a recommendation of sanction. A sanction other than expulsion can be recommended by three-quarters of the voting panel members. A sanction of expulsion can only be recommended by a unanimous vote of the voting panel members.

(d)  Reports of the Hearing Panel shall include a finding of fact and a determination of the guilt or innocence of the respondent. If the respondent is found guilty, then the report will also include a recommendation of sanction. Sanctions will be determined in accordance with Article III, Section 5 and Article II, Section 2 of this Code. This report shall be forwarded to the Executive Vice President for Academic Affairs, who will review the report of the Hearing Panel. If in the judgment of the Executive Vice President for Academic Affairs the sanction recommended by the Panel is significantly at variance with sanctions imposed in closely similar cases, the Executive Vice President for Academic Affairs may revise the sanction before notifying the respondent of the Hearing Panel's decision of guilt or innocence and the decision as to sanction. The complainant, appropriate Department Chair and Dean shall receive a copy of the Hearing Panel's report and the Executive Vice President's decision as to sanction.

(e)  These proceedings should be concluded as expeditiously as possible. The Hearing Panels should strive to have proceedings concluded within seven weeks of the report of the violation. However, failure to do so shall not constitute improper procedure under the Code.

### Section 5:  Sanctions
(a)  The recommended minimum sanction in first offense cases shall be failure of the assignment in question. The recommended minimum sanction in repeat violation cases shall be failure of the course. For more serious offenses sanction may be suspension from the University for a specified, minimum time or expulsion from the University.  Other sanctions may be appropriate for particular cases.

(b)  Sanctions of suspension or expulsion, as a result of academic dishonesty, may only be determined by a Hearing Panel.

(c)  Attempts to commit acts prohibited by this Code may be punished to the same extent as completed violations.

(d)  Respondents found in violation of this Code may also be removed from certain University programs, in accordance with the regulations and bylaws of that program.

(e)  All sanctions except failure of the assignment in question shall be marked on the respondent's permanent record (i.e., transcript) with the phrase "Academic Dishonesty". In the case of failure of the course, the notation shall remain on the transcript of the respondent for a minimum of two years. In the case of suspension or expulsion, the notation shall remain on the transcript of the respondent for a minimum of three years. After the minimum time has elapsed, the respondent may petition to the Executive Vice President for Academic Affairs for the removal of the sanction notation from the transcript. This provision shall not, however, prohibit any program, department, college or school of the University from retaining records of violations and reporting violations as required by their professional standards; the University may retain, for appropriate administrative purposes, records of all proceedings regarding violations of the Code of Academic Integrity.

### Section 6:  Hearing Panel Procedural Guidelines
(a)  All attendant procedures and records of the Academic Integrity Council and its Hearing Panels, from the initial charge to the final resolution, shall be strictly confidential.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

YU YI CHIEN,

          Plaintiff,

    v.                                 Civ. No. 08-486-RMU

THE GEORGE  WASHINGTON UNIVERSITY,

          Defendant.

## <u>ORDER</u>

Upon consideration of the Motion to Dismiss by defendant The George

Washington University, it is hereby

ORDERED that said Motion be and hereby is GRANTED.  And is it further

ORDERED that the Complaint in this case is dismissed with prejudice.


                                   _____

                                   United States District Judge

Dated:



Serve:  All Counsel of Record by CM/ECF